IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

UNITED STATES OF AMERICA

v.  CRIMINAL CASE NO. 3:09-CR-00002-GHD

RICHARD F. "DICKIE" SCRUGGS

MEMORANDUM OPINION DENYING MOTION FOR JUDGMENT ON THE PLEADINGS

Presently before the Court is Petitioner's motion for judgment on the pleadings [145] concerning his petition to vacate and set aside his conviction pursuant to 28 U.S.C. § 2255. Upon due consideration of the motion, responses, exhibits, and record, the Court is ready to rule.

Factual and Procedural Background

On February 10, 2009, Petitioner Richard F. "Dickie" Scruggs ("Petitioner" or "Scruggs") pleaded guilty to a one-count information charging him with aiding and abetting in honest services mail fraud in violation of 18 U.S.C. §§ 2, 1341, and 1346. Waiving a pre-sentence investigation, he was sentenced to seven years in the custody of the United States Bureau of Prisons and three years of supervised release, both to run concurrently with a five-year sentence he received in Cause No. 3:07CR192. The Court imposed a $100,000 fine.[1] Pursuant to a plea agreement, the Government moved to dismiss the indictment against Petitioner which charged conspiracy to violate the federal programs bribery statute, 18 U.S.C. § 666 (Count I) and

---

[1] In Cause No. 3:07-CR-192, Petitioner pleaded guilty to conspiracy to commit honest services wire fraud and federal program bribery (18 U.S.C. §§ 2, 371, 666(a)(2)(b), 1343, 1346) for his acts in conspiring to bribe a state circuit court judge, Judge Henry Lackey, who was presiding over *Jones v. Scruggs*, Civil Action No. L07-135, a suit then pending in the Circuit Court of Lafayette County, Mississippi, against Petitioner, concerning the division of legal fees arising from the settlement of numerous cases. Petitioner was sentenced to five years in the custody of the United States Bureau of Prisons and three years supervised release and fined $250,000.

three counts of aiding and abetting in honest services mail fraud under 18 U.S.C. §§ 2, 1341, and 1346 (Counts II–IV).

On June 23, 2011, Scruggs filed a 28 U.S.C. § 2255 petition to vacate his conviction on the basis of the Supreme Court's decision in *Skilling v. United States*, 130 S. Ct. 2896, 177 L. Ed. 2d 619 (2010). *Skilling* confines the reach of the honest services statute (18 U.S.C. § 1346) to bribery and kickback schemes. *Skilling*, 130 S. Ct. at 2933. Petitioner argues that although the scheme to influence DeLaughter was admittedly unethical, it did not involve a *quid pro quo*, and therefore, he is "actually innocent" in light of *Skilling*.

Because *Skilling* substantively defines and narrows the scope of a criminal statute, it should be applied retroactively to cases on collateral review. *Schriro v. Summerlin*, 542 U.S. 348, 351, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004). Scruggs' petition is timely since it was filed within one year of the *Skilling* decision. *See* 28 U.S.C. § 2255(f)(3). There are nonetheless significant procedural hurdles before considering Petitioner's claim on the merits. *Bousley v. United States*, 523 U.S. 614, 621, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998). "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Id.* (internal quotation marks and citation omitted). Indeed, the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Id.* Petitioner filed no direct appeal from his guilty plea challenging his conviction or sentence and has procedurally defaulted on the claim he now raises.

Where a defendant procedurally defaults by failing to raise a claim on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and "actual prejudice" or that he is "actually innocent." *Id.* at 622 (citations omitted). To prove "cause," a petitioner must "show that some objective factor external to the defense impeded

counsel's efforts to comply with the . . . procedural rule." *Murray v. Carrier*, 477 U.S. 478, 479, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986). "[W]here a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim . . . ." *Reed v. Ross*, 468 U.S. 1, 16, 104 S. Ct. 2901, 82 L. Ed. 2d 1 (1984). Petitioner's claim does not qualify as a novel claim. Before the U.S. Supreme Court decided *Skilling* in June 2010, the courts had spent "two decades attempting to cabin the breadth of § 1346 through a variety of limiting principles," with no consensus emerging. *Sorich v. United States*, 129 S. Ct. 1308, 1309, 173 L. Ed. 2d 645 (2009) (Scalia, J., dissenting from denial of certiorari of an honest services case one year before the Supreme Court granted certiorari in *Skilling*). The legal issues concerning the honest services fraud statute were well-known at the time that Petitioner entered his guilty plea. "[W]here the basis of a . . . claim is available, and other defense counsel have perceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as cause for a procedural default." *Bousley*, 523 U.S. at 623 n.2, 118 S. Ct. 1604 (citation omitted). Petitioner cannot demonstrate cause for failing to raise his claim on direct review. *See Ryan v. United States*, 645 F.3d 913, 915 (7th Cir. 2011) ("If Ryan's lawyers had done what Skilling's lawyers did, the controlling decision today might be *Ryan* rather than *Skilling*."); *United States v. Jennings*, Crim. No. 04-402 (RHK/JSM), Civ. No. 11-150 (RHK), 2011 WL 3609298, at *3 (D. Minn. Aug. 15, 2011) ("[D]efendants both within and without the Eighth Circuit had argued for years prior to his appeal that Section 1346 was too vague to satisfy the Constitution."); *United States v. Scruggs*, No. 3:07CR192-B-A, 2011 WL 1832769, at *8 (N.D. Miss. May 13, 2011) ("[N]or is cause demonstrated by the fact that Petitioner's conviction occurred before the Supreme Court decided *Skilling*, since the legal issues concerning the honest services statute were well-known at the time of Petitioner's conviction.").

Because Petitioner has failed to demonstrate cause, the Court need not consider whether there is actual prejudice. *See Rodriguez v. Johnson*, 104 F.3d 694, 697 (5th Cir. 1997).

In the absence of a finding of cause and prejudice, Petitioner's claim may still be reviewed in this collateral proceeding if he can establish that he is "actually innocent" of honest services fraud. "To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623, 118 S. Ct. 1604 (quoting *Schlup v. Delo*, 513 U.S. 298, 327–28, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) (internal quotation marks omitted)).

> "[A]ctual innocence" means factual innocence, not mere legal insufficiency. In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, . . . the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered . . . . In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.

*Id.* at 623–24, 118 S. Ct. 1604 (internal citation omitted).

At his plea hearing on February 10, 2009, Petitioner admitted to engaging in a secret scheme to obtain an advantage in a civil proceeding, *Wilson v. Scruggs,* Cause No. 251-94-582, pending for almost a decade in the Circuit Court of Hinds County, Mississippi, wherein Petitioner, then a licensed attorney, was sued for millions of dollars by his former associate in a dispute concerning the division of legal fees from asbestos litigation. Scruggs' Plea Colloquy Tr. [23] at 5–7, 27. Petitioner pleaded guilty to an information charging that Scruggs, Ed Peters, and Scruggs' legal team, consisting of Joseph C. Langston, Timothy R. Balducci, and non-lawyer Steven A. Patterson, engaged in a scheme, unknown to the plaintiffs in the *Wilson* case, to

4

corruptly influence the circuit judge presiding over the *Wilson* case, then-Judge Bobby DeLaughter. The scheme involved exploiting two of Judge DeLaughter's vulnerabilities:

> first, his close association with former district attorney Ed Peters and, second, his known ambition to become a federal judge. Langston, Balducci[,] and Patterson paid Ed Peters $50,000 cash and Langston later paid Peters an additional $950,000, all for the purpose of using Ed Peters to influence [Judge DeLaughter]. Additionally, RICHARD F. "DICKIE" SCRUGGS contacted his brother-in-law, then a United States Senator from Mississippi, to recommend [Judge DeLaughter] for consideration for a federal district judgeship then open in the Southern District of Mississippi. All of this occurred as the *Wilson v. Scruggs* case gained intensity and proceeded to a final resolution in [Judge DeLaughter's] court.

Scruggs' Information [13] at 2–3. Petitioner admitted at his plea hearing that he, aided and abetted by others, knowingly used the U.S. mail in executing the scheme, by mailing entries of attorney appearance for Langston and Balducci for filing in the *Wilson* case in the Circuit Court of Hinds County. *Id.* at 7.

In his motion for judgment on the pleadings, Petitioner argues that "his political endorsement ('recommendation') of then[-]Judge Bobby DeLaughter was protected speech," and "even if Petitioner had intended for his endorsement to influence the judge's ruling, such verbal advocacy [is] insulated from prosecution by the First Amendment." Pet'r's Mot. J. Pleadings [145] at 1. Petitioner states that his "legal position is this: Non-financial political speech can never be the basis for a bribe. The only exception to the protection afforded such speech by the First Amendment is 'financial speech,' i.e., campaign contributions that are traded for a 'specific' governmental act. *See McCormick v. United States,* 500 U.S. 257, 273 (1991) (in the campaign contribution context where First Amendment concerns are almost as strong as the present context involving actual political speech, only if 'payments are made in return for an

explicit promise or undertaking by the official to perform or not to perform an official act, are they criminal')." Pet'r's Reply Mem. in Support of J. Pleadings [151] at 1–2.

Law and Analysis

In support of his motion for judgment on the pleadings, which argues that verbal advocacy is insulated from prosecution by the First Amendment and that non-financial speech can never be the basis of a bribe, Petitioner has cited a litany of campaign contribution and expenditure cases for the proposition that "[t]he only 'compelling interest' that the Supreme Court has ever recognized as a justification for burdening political speech is the prevention of corruption through 'financial *quid pro quo*: dollars for political favors." *Citizens United v. Fed. Election Comm'n,* 130 S. Ct. 876, 910 (2010) (citing prior cases); *McCormick,* 500 U.S. at 273; *Let's Help Fla. v. McCrary,* 621 F.2d 195, 199 (5th Cir. 1980)." Pet'r's Reply Mem. in Support of J. Pleadings [151] at 3.

Petitioner's reliance on campaign contribution and expenditure cases is misplaced. Obviously, these decisions are going to be limited to a discussion of corruption through money. Citing these cases to support the proposition that "non-financial political speech can never be the basis for a bribe" or the proposition that "verbal advocacy is insulated from prosecution" is a fallacy because these decisions do not address those issues. The "financial *quid pro quo*: dollars for political favors" quotation that Petitioner cites, when stated in context, does not limit corruption to financial *quid pro quo*. It instead states within the framework of a campaign finance decision that "[t]he hallmark of corruption is the financial *quid pro quo*: dollars for political favors." This parenthetical quotation from *Citizens United* originates from another campaign finance case, *Fed. Election Comm'n v. Nat'l Conservative Political Action Comm.,* 470 U.S. 480, 496, 105 S. Ct. 1459, 84 L. Ed. 2d 455 (1985), where the Supreme Court states

"that preventing corruption or the appearance of corruption are the only legitimate and compelling government interests thus far identified <u>for restricting campaign finances</u>." 470 U.S. 480, 496–97, 105 S. Ct. 1459 (emphasis added). Petitioner twice cites *Let's Help Florida* as stating: "[T]he sole Governmental interest that the Supreme court recognized as a justification for restricting [speech] was the prevention of quid corruption between a contributor and a candidate." Pet'r's Reply Mem. in Support of J. Pleadings [151] at 4; Pet'r's Mem. in Support of Mot. to Vacate [126] at 29. The actual quote from *Let's Help Florida* is as follows: "The sole governmental interest that the Supreme Court recognized as a justification for restricting <u>contributions</u> was the prevention of *quid pro quo* corruption between a contributor and a candidate." 621 F.2d at 199 (emphasis added). Petitioner's substitution of the word "speech" in a decision that only addresses campaign contributions is not innocuous.

Indeed, the constitutional guarantee of freedom of speech does not immunize "speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498, 69 S. Ct. 684, 93 L. Ed. 834 (1949). And "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed." *Id.* at 502, 69 S. Ct. 684. Discussing promises that may be declared illegal without constitutional difficulty, the Supreme Court has stated:

> No body politic worthy of being called a democracy entrusts the selection of leaders to a process of auction or barter. And as a State may prohibit the giving of money or other things of value to a voter in exchange for his support, it may also declare unlawful an agreement embodying the intention to make such an exchange. Although agreements to engage in illegal conduct undoubtedly possess some element of association, the State may ban such illegal agreements without trenching on any right of association protected by the First Amendment. The fact that such an

7

> agreement necessarily takes the form of words does not confer upon it, or upon the underlying conduct, the constitutional immunities that the First Amendment extends to speech. Finally, while a solicitation to enter into an agreement arguably crosses the sometimes hazy line distinguishing conduct from pure speech, such a solicitation, even though it may have an impact in the political arena, remains in essence an invitation to engage in an illegal exchange for private profit, and may properly be prohibited.

*Brown v. Hartlage*, 456 U.S. 45, 54–55, 102 S. Ct. 1523, 71 L. Ed. 2d 732 (1982). "Neither the right to associate nor the right to participate in political activities is absolute in any event." *U.S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 567, 93 S. Ct. 2880, 37 L. Ed. 2d 796 (1973). "Offers to engage in illegal transactions are categorically excluded from First Amendment protection." *United States v. Williams*, 553 U.S. 285, 297, 128 S. Ct. 1830, 170 L. Ed. 2d 650 (2008). *See Ill., ex rel. Madigan v. Telemarketing Assocs., Inc.*, 538 U.S. 600, 612, 123 S. Ct. 1829, 155 L. Ed. 2d 793 (2003) ("[T]he First Amendment does not shield fraud."); *R.A.V. v. City of St. Paul*, 505 U.S. 377, 420, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992) (Stevens, J., concurring) ("Although the First Amendment broadly protects 'speech,' it does not protect the right to 'fix prices, breach contracts, make false warranties, place bets with bookies, threaten, [or] extort.' "); *United States v. Barnett*, 667 F.2d 835, 842 (9th Cir. 1982) ("The [F]irst [A]mendment does not provide a defense to a criminal charge simply because the actor uses words to carry out his illegal purpose."); *United States v. Quinn*, 514 F.2d 1250, 1268 (5th Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S. Ct. 1430, 47 L. Ed. 2d 361 (1976) ("[E]xtortionate speech has no more constitutional protection than that uttered by a robber while ordering his victim to hand over the money, which is no protection at all."); *United States v. Marchetti*, 466 F.2d 1309, 1314 (4th Cir. 1972), *cert. denied*, 409 U.S. 1063, 93 S. Ct. 553, 34 L. Ed. 2d 516 (1972) ("Threats and bribes are not protected simply because they are written or

spoken; extortion is a crime although it is verbal."); *United States v. Varani*, 435 F.2d 758, 762 (6th Cir. 1970) ("[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself."). "[W]hen 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968).

Despite Petitioner's arguments to the contrary, enforcement of the honest services fraud statute does not criminalize "simply engaging in political speech" and mere political advocacy. Pet'r's Mot. J. Pleadings [145] at 3 (quoting *Citizens United*, 130 S. Ct. at 904). Honest services fraud by bribery requires a *quid pro quo*—i.e., specific intent to give or receive something of value in exchange for an official act. The Supreme Court in *Skilling* stated that the honest services statute "draws content" from federal statues proscribing similar crimes, and it referenced 18 U.S.C. § 201(b) (bribery of a federal public official) and 18 U.S.C. § 666(a)(2) (federal programs bribery). The Court favorably cited three circuit court decisions where proof of a *quid pro quo* was required for honest services fraud convictions: *United States v. Whitfield*, 590 F.3d 325, 352–53 (5th Cir. 2009); *United States v. Ganim*, 510 F.3d 134, 147–49 (2d Cir. 2007); and *United States v. Kemp*, 500 F.3d 257, 281–86 (3d Cir. 2007). The requirements of corrupt intent and a *quid pro quo* exempt from proscription innocent or inadvertent conduct and mark the difference between bribery and legitimate political advocacy.

The Court rejects Petitioner's arguments that a conviction for honest services fraud by bribery requires an explicit agreement and a financial *quid pro quo*. As stated in *Kemp*, which the Supreme Court cited favorably in *Skilling*, "[w]hile the form and number of gifts may vary, the gifts still constitute a bribe as long as the essential intent—a specific intent to give or receive

9

something of value *in exchange* for an official act—exists." *Kemp*, 500 F.3d at 282. "[E]vidence of a *quid pro quo* can be implicit, that is, a conviction can occur if the Government shows that [a public official] accepted payments or other consideration with the implied understanding that he would perform or not perform an act in his official capacity." *Id.* at 285 (internal quotation marks and citation omitted). "[T]he official and the payor need not state the *quid pro quo* in express terms, for otherwise the law's effect could be frustrated by knowing winks and nods." *Id.* at 284.

The Fifth Circuit has also rejected Petitioner's argument that a conviction for honest services fraud by bribery requires an explicit agreement, as well as a financial *quid pro quo*. In *United States v. Whitfield*, cited favorably in *Skilling*, the appellants, like Petitioner, made the argument that their constitutional right to free political speech was at issue and argued that the Supreme Court's decision in *McCormick* required the Government to prove an explicit *quid pro quo*. *United States v. Whitfield*, 590 F.3d 325, 349 (5th Cir. 2009). The Fifth Circuit reiterated the Second Circuit's holding in *U.S. v. Coyne*, 4 F.3d 100 (2d Cir. 1993), that " 'the government does not have to prove an explicit promise to perform a particular act made at the time of payment.' Rather, it is sufficient if the public official understands that he or she is expected as a result of the payment to exercise particular kinds of influence . . . as specific opportunities arise." *Id.* at 349–50. The Court further held: "The law only requires that the Government prove the 'specific intent to give or receive something of value *in exchange* for an official act' to be performed sometime in the future." *Id.* at 353.

As to Petitioner's argument that bribery requires a financial *quid pro quo*, both federal bribery statutes recognized in *Skilling*, 18 U.S.C. §§ 201(b) and 666(a)(2), criminalize giving or offering "anything of value." "The term *'anything of value'* . . . is broad in scope and contains

10

no language restricting its application to transactions involving money, goods, or services." *United States v. Marmolejo*, 89 F.3d 1185, 1191 (5th Cir. 1996). The term "includes transactions involving intangible items." *Id.* "This broad interpretation is based upon a recognition that monetary worth is not the sole measure of value." *United States v. Nilsen*, 967 F.2d 539, 542–43 (11th Cir. 1992), *cert. denied*, 507 U.S. 1034, 113 S. Ct. 1856, 123 L. Ed. 2d 478 (1993).

Petitioner has admitted that he contacted his brother-in-law, then a United States Senator from Mississippi, to recommend DeLaughter for consideration for a vacant federal district judgeship. The Senator has testified that Petitioner asked him to call DeLaughter. DeLaughter received the Senator's call and knew that Petitioner had recommended him for the federal judgeship. All of this occurred while the *Wilson* case against Petitioner was pending before DeLaughter and proceeding to a final resolution. Petitioner has admitted that the *Wilson* case was ultimately resolved in a way favorable to him. Petitioner argues that recommending DeLaughter to the Senator and having the Senator contact DeLaughter regarding consideration for a judgeship are not "things of value." Petitioner contends that "[a]ny supposed benefit conferred by Petitioner, a private citizen endorsing a circuit court judge for consideration for a position on the federal bench, is so remote and theoretical as to prove illusory. Petitioner was just a well-connected private citizen, with no power or discretion to appoint Bobby DeLaughter." Pet'r's Mem. in Support of Mot. to Vacate [126] at 24. Petitioner's argument for a narrow construction of the term "anything of value" finds no support in case law.

"The phrase 'anything of value' in bribery and related statutes has consistently been given a broad meaning to carry out the congressional purpose of punishing misuse of public office. Corruption of office occurs when the officeholder agrees to misuse his office in the expectation of gain, whether or not he has correctly assessed the worth of the bribe." *United*

*States v. Williams*, 705 F.2d 603, 623 (2d Cir. 1983) (citation omitted). "[T]he requirement of value is satisfied if the thing has sufficient value in the mind of the person concerned so that his actions are influenced." *McDonald v. State*, 329 So. 2d 583, 587–88 (Ala. Cr. App. 1975), *cert. denied*, 429 U.S. 834, 97 S. Ct. 99, 50 L. Ed. 2d 99 (1976) (cited favorably in *Marmolejo*). The test of value is whether the recipient subjectively attaches value to the thing received. *United States v. Picquet*, 963 F.2d 54, 55 (5th Cir. 1992). In decisions cited favorably by the Fifth Circuit, courts have interpreted the term "anything of value" broadly. *See Nilsen*, 967 F.2d at 543 (finding witness's testimony to be a thing of value even though it was not needed after defendant pleaded guilty); *Williams*, 705 F.2d at 622–23 (finding stock of no commercial value to be a thing of value); *United States v. Girard*, 601 F.2d 69, 71 (2d Cir. 1979), *cert. denied*, 444 U.S. 871, 100 S. Ct. 148, 62 L. Ed. 2d 96 (1979) (finding information, amusement, sexual intercourse, the promise of sexual intercourse, a promise to reinstate an employee, and an agreement not to run in a primary election were things of value). In an honest services fraud by bribery case post-*Skilling*, the Fifth Circuit affirmed the conviction of a state court judge who used his position to obtain sexual favors in exchange for assisting a criminal defendant in *United States v. Barraza*, 655 F.3d 375 (5th Cir. 2011).

In accordance with the foregoing analysis, Petitioner's motion for judgment on the pleadings is without merit and is hereby denied.

The Government has submitted numerous exhibits in response to Petitioner's motion to vacate and set aside his conviction. Petitioner argues that "[a]t most, the Government only gestures towards the idea that there may have been an <u>implicit</u> *quid pro quo* in this case" and "provides no evidence in support of such an implicit agreement." *Id.* at 3. Petitioner contends that "[t]he Government's wishful idea of a *quid pro quo* is based on nothing more firm than its

12

own speculation." *Id.* The exhibits submitted by the Government in this case, and the Court's own records, however, provide more than speculation and a "wishful idea of *quid pro quo.*" The Court has reviewed the exhibits submitted by the Government, consisting of the following: the October 23, 2008, grand jury testimony of Joseph C. Langston; the October 21, 2008, grand jury testimony of Ed Peters and exhibits thereto; the October 2, 2008 deposition of Senator Trent Lott in *In re: Inquiry Concerning a Judge*, Case No. 2008-022, Mississippi Commission of Judicial Performance; the June 10, 2009, deposition of Timothy R. Balducci in *Eaton Corporation, et al. v. Jeffrey D. Frisby, et al.*, Cause No. 251-04-642 CIV, Circuit Court of Hinds County, Mississippi, and exhibits thereto; the June 18, 2009, deposition of Steve Patterson in *Eaton Corporation, et al. v. Jeffrey D. Frisby, et al.*, Cause No. 251-04-642 CIV, Circuit Court of Hinds County, Mississippi; and a letter dated March 30, 2006, from Judge Bobby DeLaughter to Senator Trent Lott. The Court has also reviewed the court file in Cause No. 1:08CR003, styled *United States of America v. Joseph C. Langston*, in the United States District Court for the Northern District of Mississippi, which the Court has ordered incorporated into the record of the case *sub judice*, pursuant to its authority under Rule 7(a) of the Rules Governing Section 2255 Proceedings. The numerous exhibits submitted by the Government and the court's file in Cause No. 1:08CR003 create a genuine issue as to whether Petitioner aided and abetted in a bribery scheme.

Rule 7 of the Rules Governing Section 2255 Proceedings states that the Court must give the party against whom additional materials are offered an opportunity to admit or deny their correctness. The Court finds that the best way to test the evidence and the credibility of the witnesses is through an evidentiary hearing. The time, date, and place of the same will be set by separate order.

At the evidentiary hearing, Petitioner has the burden of demonstrating that, in light of all of the evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt. *Bousley*, 523 U.S. at 623, 118 S. Ct. 1604. Subsequent to the evidentiary hearing, the Court will make a probabilistic determination about how reasonable jurors would react to the overall, newly supplemented record. *Schlup*, 513 U.S. at 329, 115 S. Ct. 851. In reaching this decision, the Court may make credibility assessments and consider how the timing of the evidence bears on the reliability of that evidence. *See id.* at 330–31, 115 S. Ct. 851. For the foregoing reasons, the motion for judgment on the pleadings [145] is DENIED. A separate order shall issue this day.

It is SO ORDERED, this the 22 day of December, 2011.

/s/ Glen H. Danielson
SENIOR JUDGE